UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BARDELL J. ANDERTON,<br><br>    Plaintiff,<br><br>  v.<br><br>AVERY FINANCIAL SERVICES, Jeff Avery, Dan Hebdon, Debbie Criddle, Dan C. Nye, Dale Hatch, Mitchell Brown, FREMONT INVESTMENT & LOAN, 1st AMERICAN TITLE CO., LITTON LOAN SERVICE, MERS aka Mortgage Electronic Registration Services, C-BASS aka Credit Based Asset Servicing & Securitization, NORTHWEST TRUSTEE SERVICES, ROUTH CRABTREE OLSEN P.S., Lance Olsen, ACE SECURITIES CORP. HOME EQUITY LOAN TRUST SERIES 2004-FMI, Derrick O'Neill, HSBC, BANK, USA, BANNOCK COUNTY (DEPUTY SHERIFF, Barker), Randy Smith, Ronald Bush, Peter McDermott, William Woodland and Lynn Winmill, and un-named/unknown Defendants 1-100,<br><br>    Defendants. | Case No. 4:10-cv-00392-EJL-CWD<br><br>**REPORT AND RECOMMENDATION** |

## INTRODUCTION

Plaintiff Bardell Anderton, proceeding pro se, brings this civil rights action under

42 U.S.C. §§ 1983 and 1985 against various financial institutions, lawyers, and judges

relating to the foreclosure of his home in Pocatello, Idaho.  The gist of Plaintiff's

complaint is that he was fraudulently induced into taking out a home loan that he could not repay, which led to the foreclosure sale of his home, and that the named financial institutions, lawyers, and judges conspired against Plaintiff in an effort to deprive him of his property.

This matter is before the Court on two motions to dismiss. The first motion, filed by three of the judicial defendants (Judges N. Randy Smith, Ronald Bush, and B. Lynn Winmill),[1] seeks dismissal under Fed. R. Civ. P. 12(b)(1), (2), (5) and (6). (Dkt. 8.) The judges assert that dismissal is warranted on several grounds, including, judicial immunity, failure to state a claim, and failure to perfect service of process. (*Id*.) The second motion, filed by HSBC Bank, USA, as Trustee of the Ace Securities Corporation, Home Equity Loan Trust Series 2004-FM1, Credit Based Asset Servicing and Securitization, Northwest Trustee Services, Routh Crabtree Olsen PS, Lance Olsen, and Derrick O'Neill, also seeks dismissal under Rule 12(b)(5) and (6), and asserts that Plaintiff has failed to state a claim upon which relief can be granted and that Plaintiff has failed to perfect service of process. (Dkt. 16.) Defendants Mortgage Electronic Registration Systems, Inc., and Litton Loan Servicing LP also seek dismissal and have joined the non-judicial defendants' motion to

---

[1] Plaintiff's allegations against Judges Smith and Bush concern actions the judges took while acting as state trial court judges in the Sixth Judicial District Court of Idaho. Judge Smith later was appointed to, and currently is sitting on, the United States Court of Appeals for the Ninth Circuit. Judge Bush is currently serving as a Magistrate Judge on the United States District Court for the District of Idaho. Judge Winmill is currently the Chief District Judge on the United States District Court for the District of Idaho. Plaintiff's claims against Judge Winmill concern alleged actions taken by Judge Winmill while sitting on the federal bench.

dismiss.[2] (Dkt. Nos. 18 and 26.)

On July 8, 2011, the Court took the judges' motion to dismiss under advisement, finding the motion appropriate for disposition without oral argument pursuant to Dist. Idaho Loc. Civ. R. 7.1(d). (Dkt. 24.)  On July 13, 2011, the Court heard oral arguments on the non-judicial defendants' motion to dismiss.  Having considered the parties' arguments, briefing, and other materials submitted on the motions, and for the reasons set forth below, the undersigned will recommend that both of the motions to dismiss be granted.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that around February of 2003 he began hearing advertisements by Avery Financial Services ("Avery Financial") on the radio for home loans.  Finding himself in need of money, Plaintiff called Avery Financial and alleges that he was quoted a $196,000 loan at 5.25% interest rate to be re-payed over 30 years at $1,100 per month. Plaintiff received a loan document from Fremont Investment and Loan purposing a loan for approximately $172,000 at 8.5% over 30 years.  According to Plaintiff, "[a]lmost immediately that proposal was withdrawn and was lowered to approx. $156,000 and 8.5% Loan Rate with a mandatory variable rate loan raising the interest rate within 2 years by 6.99 percent and the payments were in excess of $1,900.00 . . . ." (Dkt. 1 at 18-19, bold

---

[2]  As indicated by the above motions, the issue of whether Plaintiff perfected service of process has been raised, and not all of the named defendants have appeared in this case.  All of the appearing defendants have moved for dismissal under Fed. R. Civ. P. 12.

and italics omitted.)  Plaintiff states that "[t]hey had successfully . . . backed me into a corner where I felt I had no other choice so I agreed I would TRY 'with the exception of the variable rate and prepayment penalties had to go away they had also proposed.'" (*Id*. at 19, bolding and italics omitted.)

Plaintiff executed the refinance loan package on or about June 3, 2003, which provided for a loan in the amount of $156,000.00 with a term of fifteen years and a fixed interest rate of 8.5% per annum.  The loan was funded on June 9, 2003, and Plaintiff received approximately $95,000.00.  Ultimately, Plaintiff was unable to make his payments and defaulted under the terms of the loan agreement in May of 2004.  Non-judicial foreclosure proceedings began in November and December of 2004.  On December 14, 2005, Defendant Northwest Trustee Services, Inc., sent a notice of trustee's sale to Plaintiff. (Dkt. 4-4 at 3.)  Following several postponements, Plaintiff's property was scheduled to be sold at a trustee's sale on February 15, 2006. (*Id*. at 4.)

Plaintiff alleges that he did not receive notice of the trustee's sale, and only learned of the sale through a friend who saw it on the internet.  Upon learning of the upcoming sale, Plaintiff filed a motion for an emergency hearing in federal court. *See Anderton v. Avery Financial Group, Inc.*, 4:05-cv-00436-BLW-RCT (Dist. Idaho Feb. 14, 2006).  The hearing was held on February 14, 2006, during which attorney Lance Olsen, of Routh Crabtree Olsen, represented the defendants.  Defendant Olsen represented to the court that Litton Loan Servicing LP had given Plaintiff all the notice required by Idaho law, and the judge allowed the sale to go forward the next day.  Plaintiff claims that Defendant Olsen

committed perjury when he represented that proper notice of the sale had been given.

Plaintiff's property was sold on February 15, 2006. Three days later, on February 18, 2006, Plaintiff received a document entitled "Notice of Trustee's Sale" notifying Plaintiff that the property was scheduled to be sold at a trustee's sale on June 21, 2006. Plaintiff again filed a motion, this time in state court, "to find out what was going on." (Dkt. 1-1 at 23.) A hearing was held on June 20, 2006, before Judge N. Randy Smith. During the hearing, Defendant Olsen, again representing the defendants, informed the court that the advertisement in the Idaho State Journal of the sale was an error and the foreclosure procedure was being redone. Judge Smith ruled that, if Plaintiff could produce a check by 8:00 a.m. the following morning, the foreclosure sale would be postponed for thirty days. Plaintiff could not obtain the money and the sale went forward again.

In November of 2006, Plaintiff was served with a state court summons and complaint by HSBC as Trustee for Ace Securities Corporation ("Ace"). Ace sought possession of the property, which it had purchased at the trustee's sale. Plaintiff contested the action, which was before Judge Ronald Bush. Plaintiff filed a motion to disqualify Judge Bush for bias and prejudice. Judge Bush referred the motion for disqualification to another judge, who found that Judge Bush should not be disqualified. Ultimately, Judge Bush ruled in favor of Ace.

Plaintiff's complaint mentions various other state court proceedings. The complaint does not make clear the exact nature of the cases, but it is clear that they all

relate to the foreclosure. Due to the appointments of Judges Smith and Bush to the federal bench, several other state court judges presided over these proceedings. Ultimately, Plaintiff's challenges to the foreclosure of his home were unsuccessful. During the course of the state court proceedings, Plaintiff filed several notices of lis pendens. It is not clear from the complaint when these were filed or how many were filed, but Defendant Ace represents that nine lis pendens were filed by Plaintiff relating to the property at issue in this case, and all of them have been expunged.

On August 26, 2009, Plaintiff filed an action in federal court against state court Judge David Nye and 100 unknown defendants. *See Anderton v. Nye*, 4:09-cv-00419-BLW. The case was assigned to Chief United States District Judge B. Lynn Winmill. Plaintiff alleged that Judge Nye violated Plaintiff's rights by failing to disqualify himself in one of the above mentioned state court proceedings and by issuing adverse rulings against Plaintiff, including an order expunging one of the several notices of lis pendens. Unlike the suit presently before the Court, the suit before Judge Winmill did not specifically implicate Plaintiff's right to possession of any real property – it simply challenged what Plaintiff perceived as improper actions taken by Judge Nye. Plaintiff also filed a notice of lis pendens in connection with the federal suit. Judge Winmill issued an order quashing the lis pendens because the suit against judge Nye was not an action that would affect the title or the right of possession of any real property. Plaintiff then filed a motion to disqualify Judge Winmill, which was denied. Plaintiff thereafter withdrew the complaint and the case was dismissed without prejudice in August of 2010.

During the same month that Plaintiff's federal suit against Judge Nye was dismissed, Plaintiff, again proceeding pro se, filed the present action and an accompanying notice of lis pendens.[3] (Dkt. Nos. 1 and 2.)   The new complaint, brought pursuant to 42 U.S.C. §§ 1983 and 1985, is far more global in scale, adding Judge Winmill as a defendant and alleging a broad conspiracy between the financial institutions, lawyers, and judges involved with the foreclosure and sale of Plaintiff's property and Plaintiff's repeated attempts in state and federal court to undue the foreclosure.  Plaintiff names the following financial institutions and persons involved with those institutions as defendants: Avery Financial; Jeff Avery (the CEO of Avery Financial); Dan Hebdon and Debra Criddle (employees of Avery Financial); Fremont Investment & Loan Inc.; Litton Loan Servicing; Mortgage Electronic Recording Service ("MERS"); Credit Based Asset Servicing and Securitization ("C-BASS"); Northwest Trustee Services; and Ace.  Plaintiff also names the law firm Routh Crabtree Olsen PS (which represented the above financial institutions in the various state court proceedings), and individual attorneys Lance Olsen and Derrick O'Neill.  Finally, Plaintiff names the following judges as defendants: Mitchell Brown (judge in the Sixth Judicial District of Idaho, County of Bannock ("Bannock County")); N. Randy Smith (formerly a judge in Bannock County); Ronald Bush (formerly a judge in Bannock County); Peter McDermott (judge in Bannock County); William Woodland (judge in Bannock County); and Chief United States District

---

[3]  On October 22, 2010, Defendant Ace Securities Corp., filed a Motion to Quash Lis Pendens. (Dkt. 6.) That motion remains pending.

Court Judge B. Lynn Winmill.

Plaintiff seeks damages and costs in excess of $14 million, restoration of title to and possession of his home in Pocatello, and the removal and disbarment of the various judges and attorneys associated with this matter.[4]

## DISCUSSION

### 1.     Judicial Immunity

In their motion to dismiss, Judges Smith, Bush, and Winmill argue that dismissal is warranted on the following grounds: lack of subject matter jurisdiction, absolute immunity, sovereign immunity, qualified immunity, failure to state a claim for relief, failure to perfect service of process and failure to exhaust administrative remedies. (Dkt. 8.)  Because the Court finds that the judges are entitled to absolute judicial immunity, the other arguments will not be addressed.

It is well-settled that "[j]udges are absolutely immune from civil liability for damages for their judicial acts." *Mullis v. U.S. Bankr. Court for Dist. Of Nevada*, 828 F.2d 1385, 1388 (9th Cir. 1987).  "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all

_____

[4]  During the course of the present litigation, on September 13, 2010, state court Judge Robert Naftz issued an order expunging a notice of lis pendens filed by Plaintiff in state court in May of 2010 and specifically enjoined Plaintiff "from recording further lis pendens against the aforementioned property without leave of a court of competent jurisdiction in and for the state of Idaho from this date forward." (Dkt. 7 at 10.)

jurisdiction.'" *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 551 (1872)).

Plaintiff alleges that the defendant judges took the following actions in violation of his constitutional rights and in furtherance of the alleged conspiracy to deprive Plaintiff of his property:

(1)     Judge Smith stated at a hearing on June 20, 2006, that he would cancel the foreclosure sale of Plaintiff's home on the condition that Plaintiff produced a cashiers check for approximately $12,000 the following day;

(2)     Judge Smith "did nothing" when a witness allegedly perjured himself in open court (Dkt. 11 at 3);

(3)     Judge Smith did not act impartially in Plaintiff's case;

(4)     Judge Smith advised Plaintiff in open court that Black's Law Dictionary is not binding authority;

(5)     Plaintiff's motion to disqualify Judge Bush on the grounds of bias and prejudice was referred by Judge Bush to another judge, who found that Judge Bush should not be disqualified;

(6)     Judge Bush "issued [dismissal] Orders to throw Plaintiff out [of court.]" (Dkt. 11 at 4); and

(7)     Judge Winmill issued adverse rulings against Plaintiff when not all of the parties had been served.

Plaintiff does not appear to dispute the fact that the above actions were judicial in nature. Plaintiff contends, however, that the judges are not entitled to judicial immunity because the actions were taken "without jurisdiction." (Dkt. 11 at 2.) For instance, Plaintiff argues that Judge Smith assumed the role of an arbitrator when he conditionally cancelled the foreclosure sale if Plaintiff could produce $12,000 the following day. Plaintiff states that "[u]nder Idaho Laws, once a Judge acts as an arbitrator in a Case, he can no longer remain on that Case, i.e. loses Jurisdiction [and that since] Defendant Smith remained on the Case until his appointment to the Federal Court . . . he was functioning without Jurisdiction and had No Immunity." (Dkt. 11 at 3-4, bolding, capitalization, and underlining omitted.) Concerning Judge Winmill, Plaintiff states that "Judge Winmill decided to make Judgements in Case No. 4:09-CV-00419-BLW when none of the parties had been served [and that] Defendant Winmill was/is definitely without jurisdiction." (*Id.* at 2, italics, bolding, and capitalization omitted.)

Plaintiff misconstrues the meaning of "jurisdiction" as it applies to the judicial immunity analysis. The United States Supreme Court has illustrated the distinction between a judicial act in the clear absence of jurisdiction – which is not entitled to immunity – and a judicial act in excess of jurisdiction – which remains entitled to immunity:

> [I]f a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent

> crime, he would merely be acting in excess of his jurisdiction
> and would be immune.

*Stump*, 435 U.S. at 357 n. 7.

Here, the defendant judges did not take any actions in the clear absence of jurisdiction. The Idaho Constitution vests the state district courts with "original jurisdiction in all cases, both at law and in equity, and such appellate jurisdiction as may be conferred by law." Idaho Const. art. V, § 20. Plaintiff invoked the general jurisdiction of the state district court when he filed for various relief challenging the foreclosure of his property. Similarly, Plaintiff invoked the general jurisdiction of the United States District Court when he filed his federal suit before Judge Winmill. Plaintiff does not contend that the judges could not rule on issues before them, but that the judges either misapplied or failed to follow Idaho and federal law. That contention is not sufficient to deprive a judge of immunity. *Castillo v. Castillo*, 297 F.3d 940, 947 (9th Cir. 2002) ("Absolute immunity insulates judges from charges of erroneous acts or irregular action, even when it is alleged that such action was driven by malicious or corrupt motives or when the exercise of judicial authority is flawed by the commission of grave procedural errors.") (citations and internal quotations omitted).

Furthermore, Plaintiff has not cited any legal authority for the proposition that the alleged actions do not qualify for judicial immunity, and, as the defendant judges point out, the failure to cite such authority is grounds itself for rejecting the argument. *See Phillips v. Calhoun*, 956 F.2d 949, 953 (10th Cir. 1992) (declining to consider issue

because party's position was not supported by legal authority). For the reasons set forth above, the undersigned will recommend that the defendant judges' motion to dismiss be granted.

**2.      The Non-Judge Defendants' Motion to Dismiss**

Defendants Ace Securities, C-BASS, Northwest Trustee Services, Routh Crabtree Olsen PS, Lance Olsen, and Derrick O'Neill move the Court to dismiss Plaintiff's complaint on two grounds. (Dkt. 16.)  First, Defendants argue that Plaintiff has failed to perfect service of process and that the case should therefore be dismissed under Fed. R. Civ. P. 12(b)(5).  Second, Defendants argue that Plaintiff's complaint fails to state a claim upon which relief can be granted and that the case should therefore be dismissed under Fed. R. Civ. P. 12(b)(6).  As indicated above, Defendants MERS and Litton join Defendants' motion to dismiss. (Dkt. 18.)

**A.      Service of Process**

Rule 4(e) of the Federal Rules of Civil Procedure specifies the proper procedure for serving an individual within the United States:

> Unless federal law provides otherwise, an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by:
>
>> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>>
>> (2) doing any of the following:

(A) delivering a copy of the summons and of the complaint to the individual personally;

(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e). Rule 4(h) provides that corporations, partnerships, or other business associations, must be served:

(1) in a judicial district of the United States:

(A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or

(B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and – if the agent is one authorized by statute and the statute so requires – by also mailing a copy of each to the defendant.

Fed. R. Civ. P. 4(h). In March of 2011, Plaintiff attempted to serve Defendants with the Summons and Complaint via U.S. priority mail. (Dkt. 15.) Service through mail is not an acceptable means of service for individuals or business associations under Fed. R. Civ. P. 4(e) or (h). The question then, is whether service through mail is authorized under Idaho state law, which would suffice for individuals under Fed. R. Civ. P. 4(e)(1) and for business associations under Rule 4(h)(1)(A).

The short answer is no; service by mail is not authorized by Idaho law under the circumstances present in this case. Concerning service upon individuals, Rule 4(d)(2) of the Idaho Rules of Civil Procedure provides for service "by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person over the age of eighteen (18) years then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process." Idaho R. Civ. P. 4(d)(2). The same holds true for service of process on business associations. *See* Idaho R. Civ. P. 4(d)(4)(A).[5] Thus, Defendants are correct that they have not been properly served.[6]

Rule 4(m) of the Federal Rules of Civil Procedure provides that, "if a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that

---

[5] Rule 4(d)(4)(A) of the Idaho Rules of Civil Procedure provides that domestic or foreign corporations shall be served "by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by appointment or by statute of this state to receive service of process, and upon a partnership or other unincorporated association which is subject to suit under a common name, by delivering a copy of the summons and the complaint to an officer or the managing or general agent of the partnership or association, or to any other agent authorized by appointment or by statute of this state to receive service of process."

[6] On May 17, 2011, Plaintiff filed a notice of partial return of service, (Dkt. 19), indicating that an agent of Defendant First American Title Co. was personally served on May 4, 2011. This service came well after the 120 day time limit from the date the complaint was filed for service of process under Fed. R. Civ. P. 4(m). Defendant First American Title Co. has not appeared in this action.

defendant or order that service be made within a specified period of time." Fed. R. Civ. P. 4(m). The Rule further provides that, "if the plaintiff shows *good cause* for the failure, the court must extend the time for service for an appropriate period." *Id*. (emphasis added).

In this case, Plaintiff filed his Complaint on August 5, 2010. (Dkt. 1.) A Summons was issued by the Clerk of Court on September 13, 2010. (Dkt. 5.) The record indicates, however, that Plaintiff did not serve any of the defendants with the summons or complaint until late March of 2011. As indicated above, Fed. R. Civ. P. 4(m) requires service of the summons and complaint within 120 days after the complaint is filed. Here, Plaintiff waited approximately seven months, or approximately 210 days to serve the defendants. Furthermore, as outlined above, because Plaintiff's method of service was defective, he still has not properly served Defendants. The question then, is whether Plaintiff has good cause for the failure to serve the defendants within the time frame set forth in Rule 4(m).

When considering whether to dismiss a case for untimely service, "courts must determine whether good cause for the delay has been shown on a case by case basis." *In re Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001). "[A]t a minimum, 'good cause' means excusable neglect." *Id*. (quoting *Boudette v. Barnette*, 923 F.2d 754, 756 (9th Cir. 1991)). To establish good cause, a plaintiff may be required to show: (a) the party to be served received notice of the lawsuit; (b) the defendant would suffer no prejudice; and (c) the plaintiff would be severely prejudiced if his complaint were dismissed. *In re Sheehan*, 253 F.3d at 512; *see also*, *Hart v. U.S.*, 817 F.2d 78, 80-81 (9th Cir. 1987) (noting that

dismissal for untimely service would be unwarranted if the plaintiff demonstrated all three of those factors and had a "justifiable excuse for a failure to serve properly").

Generally, a showing of good cause does not include ignorance of the law. *See Townsel v. Contra Costa County*, 820 F.2d 319 (9th Cir. 1987); *see also Tuke v. U.S.*, 76 F.3d 155, 156 (7th Cir. 1996) ("Failure to read a rule is the antithesis of good cause. Ignorance may be an explanation but is not an excuse."). Likewise, inadvertent error or ignorance of governing rules alone does not constitute good cause and will not excuse failure to timely serve. *Matasareanu v. Williams*, 183 FRD 242 (C.D. Cal. 1998). Notwithstanding the above, Rule 4(m) authorizes broad judicial discretion to extend the time for service even after the 120 day period has expired. *Efaw. Williams*, 473 F.3d 1038, 1040 (9th Cir. 2007). This discretionary authority, however, is not limitless, and in making extension determinations not justified by good cause, the Court may consider factors such as whether the Plaintiff will be barred by the statute of limitations if the case is dismissed without prejudice, actual notice of the lawsuit, and whether proper service has been completed. *Id*. (citing *Troxell v. Fedders of N. Am., Inc.*, 160 F.3d 381, 383 (7th Cir. 1998)). If the court declines to extend the time for service of process, the proper remedy is to dismiss the suit without prejudice. *United States v. 2,164 Watches*, 366 F.3d 767, 772 (9th Cir. 2004).

In this case, Plaintiff does not argue good cause for improper service. Indeed, it is clear from his response to Defendants' motion to dismiss for lack of service that Plaintiff is confused about the requirements of Fed. R. Civ. P. 4 and believes that he has properly

served the defendants. (Dkt. 22.)  Plaintiff states that "[a]s to my 'service of process being technically correct' I did not want them to claim the Summons and Complaint had not been sent or received! The Code requires 1st Class Mail is all! they [sic] is required!  The way I sent them was 1st Class only ir [sic] proves it was sent that they were sent and <u>delivered!</u>" (*Id*. at 3, emphasis in original.)

Plaintiff's ignorance of the law is not good cause.  However, under Ninth Circuit case law, even in the absence of good cause, the Court may extend the deadline for Plaintiff to properly serve the defendants but is not required to do so. *Efaw*, 473 F.3d at 1040.  Even if the Court were inclined to grant Plaintiff leave to properly serve the defendants, for the reasons set forth below, the Court also finds that Plaintiff has failed to state a claim upon which relief can be granted and will recommend dismissal of Plaintiff's claims against the non-judge defendants on that basis.

### B.      Failure to State a Claim

Defendants Ace Securities, C-BASS, Northwest Trustee Services, Routh Crabtree Olsen PS, Lance Olsen, and Derrick O'Neill also move the Court to dismiss Plaintiff's action for failing to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

Under Rule 16(b)(6) of the Federal Rules of Civil Procedure, a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct.

1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Under this analysis, "a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." *Twombly*, 550 U.S. at 545.  Moreover, a complaint that only raises "the mere possibility of misconduct" does not establish that the plaintiff is entitled to relief. *Iqbal*, 129 S.Ct. at 1949.

For claims based on fraud or deceit, Fed. R. Civ. P. 9(b) requires particularity in pleading the circumstances of the alleged fraud.  Because Plaintiff's allegations in this case involve fraud, the complaint must meet not only the requirement of Fed. R. Civ. P. 8, but also the particularity requirements of Rule 9. *See Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001).  It is well-settled that mere conclusory allegations of fraud are not sufficient for the purposes of Rule 9.

The standard used to evaluate a motion to dismiss is liberal, particularly when the action has been filed pro se. *Estelle v. Gamble*, 429 U.S. 97 (1976).  However, the liberal treatment of a pro se civil rights complaint may not be invoked to supply any essential elements of the claim that do not appear in the complaint. *Id.*  "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Ivey v. Bd. of Regents of Univ. Of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

Defendants argue that Plaintiff has failed to set forth a prima facie case under 42 U.S.C. §§ 1983 and 1985.  Defendants are correct.  As to the conspiracy claim under §

1985, the complaint must "set forth with certainty facts showing particularly what a defendant or defendants did to carry the conspiracy into effect, whether such acts fit within the framework of the conspiracy alleged, and whether such acts, in the ordinary course of events, would proximately cause injury to the plaintiff." *Hoffman v. Halden*, 268 F.2d 280, 295 (9th Cir. 1959). Plaintiff has failed to do so; he has provided no facts supporting the allegation that the financial institutions, lawyers, and judges acted in concert. Even assuming the financial institutions – including the lender of the loan, the loan servicing companies, and the reporting companies – acted together, this claim also must fail as a matter of law. A claim under § 1985 requires an allegation of class-based discrimination or disparate treatment. *Portman v. County of Santa Clara*, 995 F.2d 898, 909 (9th Cir. 1993). Here, Plaintiff's complaint does not contain any allegations of discriminatory treatment. Because Plaintiff's complaint fails to set forth an essential element of an action under § 1985, dismissal is appropriate under Fed. R. Civ. P. 12(b)(6).

Defendants also argue that Plaintiff has filed to state a claim under 42 U.S.C. § 1983 because the statute only affords relief for constitutional violations perpetrated by state actors or private individuals that may be appropriately characterized as state actors. State action is a prerequisite to assuming jurisdiction under § 1983. *Merritt v. Mackey*, 932 F.2d 1317, 1323 (9th Cir. 1991). Put a slightly different way, private parties may not be held liable for deprivation of another's civil rights under § 1983. *Earnest v. Lowentritt*, 690 F.2d 1198, 1200 (5th Cir. 1982) ("Section 1983 does not reach all constitutional

injuries, but only those caused by persons acting 'under color of state law.'") (citing

*Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149 (1978)). As the Fifth Circuit stated in

*Earnest v. Lowentritt*, "[i]nitiation of foreclosure proceedings pursuant to a mortgage

[does not] implicate[] . . . state law." *Id*. at 1201; *see also*, *Harper v. Federal Lnad Bank*,

878 F.2d 1172, 1177 (9th Cir. 1989) (citing *Earnest v. Lowentritt* with approval).

Plaintiff has not pled state action as to Ace Securities, C-BASS, Northwest Trustee

Services, Routh Crabtree Olsen PS, Lance Olsen, or Derrick O'Neill. Absent state action,

the above named defendants are not amenable to suit under § 1983 and dismissal of that

claim is warranted under Fed. R. Civ. P. 12(b)(6).


## <u>RECOMMENDATION</u>

NOW THEREFORE IT IS HEREBY RECOMMENDED that:

(1)     the Motion to Dismiss filed by Defendants Smith, Bush and Winmill (Dkt.

8) be GRANTED;

(2)     the Motion to Dismiss, (Dkt. 16), filed by Defendants HSBC Bank, USA, as

Trustee of the Ace Securities Corp. Home Equity Loan Trust, Series 2004-FM1, Credit

Based Asset Servicing and Securitization aka C-Bass, Northwest Trustee Services, Routh

Crabtree Olsen PS, Lance Olsen, and Derrick O'Neill be GRANTED; and

(3)     the Motion to Join Defendants' Motion to Dismiss, (Dkt. 26), filed by

Defendants Mortgage Electronic Registration Systems, Inc., and Litton Loan Servicing

LP be GRANTED.

**REPORT AND RECOMMENDATION - 20**

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.



DATED: August 23, 2011

_____
Honorable Candy W. Dale
Chief United States Magistrate Judge